## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*THE MATTER OF:*

JAY BRODSKY  - *Plaintiff*

      *-against-*

DEALER SERVICES  - *Defendants*     CASE NO._____

PALMER ADMINISTRATIVE SERVICES INC., *et al*

LIBERTY AUTOMOTIVE PROTECTION., *et al*

ROYAL PROTECTION PROGRAM

AMERICAN MERCURY

WARRANTY WORLD

MICHEAL SHAFTEL

EVAN MICHEALS

JOHN AND JANE DOE *et al*

## COMPLAINT ADDENDUM

*Issues Before the Court, Amongst others:*

Violation of the Telephone Consumer Protection Act 1991(TCPA)

47 U.S.C.A. § 227 et seq.

Sections 5(a), 5(m)(1)(A), 13(b), and 16(a) of the FTC Act

15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b)

Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the

"Telemarketing Act")

15 U.S.C. § 6105

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)

FTC Telemarketing Sales Rule ("TSR"), as amended, 16 C.F.R. Part 310

## AFFIRMATION

1.    Pursuant to the Federal Rules of Civil Procedure Rule 8 (Fed. R. Civ. P. 80),

on this 21st day of August, 2018, Jay Brodsky, a/k/a, "Mr. Brodsky and

resides at 240 East Shore Road, Apartment 444, Great Neck, New York

11023, duly deposes that the facts as stated herein are true to the best of his

knowledge.

## VENUE AND JURISTICTION

2.    Venue is appropriate under 28 U.S.C.A. § 1332 because, amongst other

things; the plaintiff, is a resident and citizen of New York State, County of

Nassau; Dealer Services, Palmer Administrative Services Inc.,

LibertyAutomotive Protection, Royal Protection Program, American

Mercury, Warranty World, Michael Shaftel, Evan Micheals, John and Jane

Doe's *et al*, conduct's business and directs their activities to residents of

New Jersey, County of Ocean, as well as Nationwide.

3.    The United States District Court for the District of New Jersey has

jurisdiction over the parties because Dealer Services, Palmer Administrative

Services Inc., Liberty Automotive Protection, Royal Protection Program,

American Mercury, Warranty World, Michael Shaftel, Evan Micheals, John

and Jane Doe's *et al*, conducts a major part of their national operations and

conducts business activities from their headquarters at 3430 Sunset Avenue,

Ocean, New Jersey, with an advertising budget not exceeded in other

jurisdictions throughout the United States.

4.    The Plaintiff brings this putative action against the defendants to secure

redress for their violations of the *Telephone Consumer Protection Act,*

*47 U.S.C. § 227 et seq. ("TCPA"), Violation of the Telephone Consumer*

*Protection Act 1991(TCPA), Sections 5(a), 5(m)(1)(A), 13(b), and 16(a) of*

*the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), Section 6 of the*

*Telemarketing and Consumer Fraud and Abuse Prevention Act (the*

*"Telemarketing Act"), 15 U.S.C. § 6105, Section 5(a) of the FTC Act, 15*

*U.S.C. § 45(a), FTC Telemarketing Sales Rule ("TSR"), as amended, 16*

*C.F.R. Part 310*

5.   Venue is appropriate under 28 U.S.C.A. § 1331 because, among other things;

     28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), (c)(3) and (d), and 1395(a),

     and 15 U.S.C. § 53(b); 15 U.S.C. § 53(b); 15 U.S.C. § 45(m)(1)(A) are

     Federal issues that can only be adjudicated within the Purview of a United

     States District Court.

6.   The Plaintiff is one of many phone call recipients, believed to number in the

     ten's of thousands, who received illegal "Spoofed" telemarketing calls

     promoting the automobile warranty services of the defendants.

7.   The telemarketers blasted millions of robocalls to American consumers.

     Many of these calls were also made to consumers whose phone numbers

     were on the National Do Not Call ("DNC") Registry. And many of these

     calls were made with inaccurate ("spoofed") caller ID numbers. All of these

     calls violate the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part

     310.

8.    The Plaintiff brings this action to enforce the consumer privacy provisions

      of the TCPA and achieve redress and compensation for himself as a

      consumer. In a case such as this, where individual damages are set by

      statute at $500-$1,500 per violation, the inclusion of punitive damages are

      best if not the only means of obtaining redress for the type of wide-scale,

      illegal telemarketing at issue, and is consistent both with the private right of

      action afforded to the aforesaid plaintiff.

9.    The Court has Federal question jurisdiction over the TCPA claims. Mims v.

      Arrow Fin. Servs., LLC, 132 S. Ct. 740 (2012).

10.   Venue is proper because one or more of the Defendants operates and

      conducts business in the State of New Jersey and therefore are subject to this

      Court's jurisdiction.


## THE PARTIES

### *Plaintiff:*

11.   Jay Brodsky, 240 East Shore Road, Apt. 444, Great Neck, New York 11023

### *Defendants:*

12.   Dealer Services, 3430 Sunset Avenue, Ocean, New Jersey 07712

13.   Palmer Administrative Services Inc., ("RMG") State I.D. 801496597,

      is a Texas corporation with its principal place of business at 3430 Sunset

      Avenue, Ocean, New Jersey 07712.  Registered agent O. Murray McNeely.

14.   Liberty Automotive Protection, 3430 Sunset Avenue, Ocean, New Jersey

      07712

15.   American Mercury, 3430 Sunset Avenue, Ocean, New Jersey 07712

16.   Warranty World, 3430 Sunset Avenue, Ocean, New Jersey 07712

17.   Micheal Shaftel, President of Palmer Administrative Services Inc. and

18.   Evan Micheals, Palmer Administrative Services, 3430 Sunset Avenue, Ocean

      New Jersey 07712

19.   At all times material to this complaint, Michael Shaftel owned, controlled in

      fact, or was a corporate officer of Palmer Administrative Services Inc. and

      other assorted corporate entities including Dealer Services, Liberty

      Automotive Protection, Royal Protection Program, American Mercury,

      Warranty World, and personally directed their "Spoofed" telemarketing

      practices. Collectively, Mr. Micheal Shaftel and the various corporate

      entities controlled by Mr. Shaftel are referred to herein as Defendants.

20.   The Defendants have conducted the business practices described

      herein through an interrelated network of companies that have common

      beneficial ownership, officers and managers, business functions, employees,

      and office locations, and that commingled funds. Because the Defendants

      business enterprise operated as a common enterprise, each of the entities that

      comprise it is jointly and severally liable for the violations herein.

21.   Defendant Michael Shaftel has formulated, directed, controlled, had the

      authority to control, or participated in the acts and practices of the

      Defendants business enterprises.

22.   At all times material to this complaint, "Defendant's" conducted the same

      business often from the same address, using the same equipment and same

      employees, and held themselves out to the public under the fictitious name

      amongst others, "Dealer Services" and "Palmer Mercedes Benz".


                              COMMERCE

23.   At all times material to this Complaint, all Defendants have maintained a

      substantial course of trade in or affecting commerce, as "commerce" is

      defined in Section 4 of the FTC Act, 15 U.S.C. § 44

## THE TELEPHONE CONSUMER PROTECTION ACT

24. In 1991, Congress enacted the TCPA to regulate the explosive growth of the

    telemarketing industry. In so doing, Congress recognized that "unrestricted

    telemarketing . . . can be an intrusive invasion of privacy." Telephone

    Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394

    (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of

    the Communications Act of 1934, 47 U.S.C. § 201 et seq.

25. The TCPA's most severe restrictions address telemarketing calls

    to residential and cellular telephone lines. In enacting the statute, Congress

    stated that banning these calls was "the only effective means of protecting

    telephone consumers from this nuisance and privacy invasion." Id. § 2(10)

    and (12); see also Mims, 132 S. Ct. at 745.

26. Accordingly, the TCPA prohibits persons from initiating telemarketing calls

    to residential telephone lines and cell phones using an autodialer and then a

    substantial pause until a human finally delivers a message without the prior

    express consent of the called party, 47 U.S.C. § 227(b).

27.    For autodialed telemarketing calls made to cellular telephones and
       landlines prior to October 16, 2013, the telemarketer must show they had a
       consumer's prior express consent to call via pre-recorded message.

28.    For autodialed telemarketing calls made to cellular telephones and
       landlines on or after October 16, 2013, the telemarketer must show prior
       express consent through a signed writing (a) bearing the signature of the
       person providing consent; (b) that specifies the telephone number to which
       the person consenting is called; (c) clearly authorizes the company to call the
       person using an auto dialer for telemarketing purposes; and (d) providing
       consent is not a condition of purchasing goods or services. See In re Rules &
       Regs.

29.    The TCPA regulates amongst other things, the use of automatic telephone
       dialing equipment commonly referred to as autodialers.

30.    Pursuant to Section 227(b)(1)(A)(iii) of TCPA bars the use of autodialers to
       make calls to wireless numbers that are not deemed as an emergency or with
       prior consent of the called party.

31.   Congress issued regulations to ban such calls after adjuring that
      automated or prerecorded phone calls are a nuisance and an invasion of
      privacy and such calls are also costly and inconvenient.

32.   The FCC recognized that wireless customers are charged for incoming calls
      whether they pay in advance or payment is tendered ante ceding a call.

33.   Congress outlawed telemarketing via unsolicited automated telephone calls,
      robocalls.


IMPLEMENTING THE TCPA, 27 FCC Rcd 1830, 1844 ¶ 33 (2012).

34.   For calls made on or after October 16, 2013, an established business

35.   On May 9, 2013, the FCC released a Declaratory Ruling holding that a
      corporation, or other entity that contracts out its telephone marketing "may
      be held vicariously liable under federal common law principles of agency for
      violations of . . . section 227(b) . . . that are committed by third-party
      telemarketers."

36.   More specifically, the FCC 2013 Ruling held that, even in the absence of
      evidence of a formal contractual relationship between the seller and the
      telemarketer, a seller is liable for telemarketing calls if the telemarketer "has

apparent (if not actual) authority" to make the calls. FCC 2013 Ruling, 28

FCC Rcd at 6586 ¶ 34.

37.   The FCC has rejected a narrow view of TCPA liability, including the

assertion that a seller's liability requires a finding of formal agency and

immediate direction and control over the third-party who placed the

telemarketing call.

38.   Under the TCPA, a seller of a product or service may be vicariously liable

for a third-party marketer's violations of Section 227(b), even if the seller

did not physically dial the illegal call, and even if the seller did not directly

control the marketer who did.

39.   A seller is liable under Section 227(b) when it has authorized a telemarketer

to market its goods or services.

40.   Additionally, a seller may be vicariously liable for a Section 227(b) violation

under principles of apparent authority and ratification.

..................................................................................................

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory
Ruling Concerning the TCPA Rules, CG Docket No. 11-50, 28 FCC Rcd
6574, 6574 ¶ 1 (2013) ("FCC 2013 Ruling").*

..................................................................................................

41.    The FCC 2013 Ruling further clarifies the circumstances under which a

        telemarketer has apparent authority:

> Apparent authority may be supported by evidence that
> the seller allows the outside sales entity access to
> information and systems that normally would be within
> the seller's exclusive control, including: access to
> detailed information regarding the nature and pricing of
> the seller's products and services or to the seller's
> customer information. The ability by the outside sales
> entity to enter consumer information into the seller's
> sales or customer systems, as well as the authority to use
> the seller's trade name, trademark and service mark may
> also be relevant. It may also be persuasive that the seller
> approved, wrote or reviewed the outside entity's
> telemarketing scripts. Finally, a seller would be
> responsible under the TCPA for the unauthorized conduct
> of a third-party telemarketer that is otherwise authorized
> to market on the seller's behalf if the seller knew (or
> reasonably should have known) that the telemarketer was
> violating the TCPA on the seller's behalf and the seller
> failed to take effective steps within its power to force the
> telemarketer to cease that conduct.

...............................................................................................................

42.    The FCC 2013 Ruling further held that, even in the absence of evidence of

        aformal contractual relationship between the seller and the telemarketer, a

seller is liable for telemarketing calls if the telemarketer "has apparent (if not

actual) authority" to make the calls.

43.     Michael Shaftel is personally liable for the acts alleged in this Complaint

        pursuant to 47 U.S.C. § 217 of the Telephone Consumer Protection Act,

        which reads, *inter alia*,

> The act, omission, or failure of any officer, agent,
>
> or other person acting for or employed by any common
>
> carrier or user, acting within the scope of his
>
> employment, shall in every case be also deemed to be the
>
> act, omission, or failure of such carrier or user as well as
>
> of that person, 47 U.S.C. § 217 (emphasis added).

## FIRST FACTS OF SUBSTANCE
*The Illegal Telemarketing Campaign at Issue*

44.     At all times relevant to this Complaint, Micheal Shaftel authorized Palmer

        Administrative Services, Dealer Services, Liberty Automotive Protection,

        Royal Protection Program, American Mercury, Warranty World, to tele-

        market on his behalf and specifically using other surreptitious trade names.

        The Defendants have operated as a common enterprise while engaging in the

unlawful acts and practices alleged herein. The Defendants have conducted

the business practices described herein through, an interrelated network of

companies that have common beneficial ownership, officers and managers,

business functions, employees, and office locations, and that commingled

funds. Because the Defendants operated as a common enterprise, each of the

entities that comprise it is jointly and severally liable for the acts and

practices of the Defendants Enterprise. Defendant Michael Shaftel has

formulated, directed, controlled, had the authority to control, or participated

in the acts and practices of the combined Defendants business enterprise.

45.   The trade-marks and trade-names of the Defendants are widely recognized

      due to an extravagant internet and telemarketing campaign.

46.   The Defendants contacted the Plaintiff by telephone on hundreds or even

      thousands of occasions over the last few years in an attempt to sell him an

      extended warranty for various vehicles no longer owned or never owned.

47.   During those numerous phone solicitations the Defendants were

      informed by the Plaintiff that he no longer owns, leases or has any

      association with the vehicles described withing the inquiry or never owned

      any of the alleged vehicles alleged to be in his possession past of present.

Over a multi year time period the Defendants were specifically commanded

to cease and desist all unsolicited telemarketing directed to the Plaintiff.

Subsequently those repeated commands/demands for privacy all fell on deaf

ears. The Defendants were also commanded to remove the Plaintiff from

their phone telemarketing lists. Following those requests the agent/agents

for the Defendants terminated their contemporaneous phone

communications which then prevented the Plaintiff from contacting the

Defendants in the future. On several occasions an authorized agent for the

Defendants engaged in salacious or malfeasant banter often resulting in a

tense standoff between both parties.

48.   On the 15th & 16th day's of February, 2018, Palmer Administrative Services

contacted the Plaintiff despite being repeatedly commanded to cease and

desist from engaging in any further solicitation of the Plaintiff for him to

purchase an extended warranty for a car he no longer owned or never owned

extemporaneously.  On one such occasion Evan Michaels, an authorized

agent for Palmer, was confronted.  After commanding him to cease and

desist he abruptly terminated  the phone call.  Within less than thirty (30)

minutes following the prior phone call, Evan Michaels was again

commanded not to call anymore, despite Plaintiffs demand the telephone

rang again. The telephone call he received used predictive or automated

dialing technology, as demonstrated by the substantial pause at the beginning

of the call prior to a human voice coming on the line. Mr. Brodsky said

Hello approximately four times, as he waited for the party who was calling

to respond. When a human finally came on the line, it was a sales associate,

Evan Michaels, who identified himself as calling on behalf of Palmer

Administrative Services. Even before being able to disseminate any vital

personal information Evan Micheals addressed the Plaintiff by name. The

Plaintiff thought it would be in his best interest to further investigate the

agent by probing his intent to disclose why he kept calling? The Plaintiff,

then inquired to Evan Michaels, the Palmer telemarketer:

*"Who did you say you were?"*..........................

Evan Micheals replied,

*"I'm with the Palmer Warranty Administration and I'm*
*calling about your 2013 Mercedes Benz."*.............

Mr. Brodsky knowing he does not, nor never owned a
Mercedes Benz further engaged the telemarketer for
additional information to disclose his motive,

*"What is Palmer Warranty exactly?"………..*

Evan Micheals boldly retorted,

*"Palmer Warranty is part of Palmer Mercedes Benz of Atlantic City in Ocean County."……….*

With that, the Plaintiff heard enough to disclose his motive especially knowing he does not, nor ever has owned a 2013 Mercedes Benz. The Plaintiff then sternly commanded Mr. Micheals,

*"I have been asking your company to remove my name from its call list for a long time.  If you do not remove my name immediately I will file a Federal lawsuit against you and your company."………*

Evan Micheals replied with abundant laughter to indemnify his next statement ,

*"It makes no difference what you do.  If you want to file a lawsuit, go ahead."…………*

Evan Micheals continued to laugh until he finally terminated the phone call.

49.   The unauthorized robocall placed by the Defendants invaded the Plaintiffs privacy and interfered with the use of his cellular telephone.

50.   The Defendants should have been aware that the automated calling operation marketing their warranties by placing telephone solicitation calls violates TCPA.

51.   The Plaintiff never contacted any of the Defendants for any purpose, and has/had no business relationship with them or anyone associated with them.

52.   The Plaintiff was aware the reason for the unsolicited telemarketing calls was to market services and business to him.

53.   The Plaintiff at no time granted consent to the Defendants to call or intrude on his privacy and as a result caused annoyance and an unnecessary expenditure of his time or efforts.

54.   The Plaintiff is the exclusive user of the telephone numbers assigned to him ending in 1666 and 3424 and is the account holder of record for those accounts.

55.   By engaging the Plaintiff with numerous minion companies, Michael Shaftel knowingly implemented the use of fictitious telephone numbers commonly referred to as "Spoofing" that mimic either the first three digits of the

number being dialing or the area code of the person who they are dialing.

This is done to lull prospective buyers into a false sense of security that the

caller is located nearby and therefore maybe one of his/her neighbors in

violation of FTC Telemarketing Sales Rule ("TSR"), as amended, 16 C.F.R.

Part 310.

56.    The Defendants purchase the names and private information from a third

       party in order to tailor their telemarketing to the particular products they are

       attempting to sell. In this particular case it is extended automobile

       warranties.

57.    At all times relevant to this lawsuit, Michael Shaftel and the Defendants had

       the ability to supervise, monitor, and control the conduct of their appointed

       agents, but consciously turned a "blind eye" to the Defendants illegal

       conduct, as they simultaneously accepted the benefits of the combined

       Defendants illegal acts.

58.    At all times relevant to this lawsuit, all of the Defendants had the

       authority to issue a "cease and desist" order to it's agents and subsidiaries

       revoking them from marketing their products using their widely known

       name.

59. At all times relevant to this lawsuit, Michael Shaftel and the Defendants had the authority to issue a "cease and desist" order to it's agents revoking their authority to tele-market on the Defendants behalf.

60. At no time did any of the Defendants issue such a "cease and desist" order to their agents, subordinates or subsidiaries.

61. At all times relevant to this lawsuit, the Defendants allowed their appointed agents, subordinates and subsidiaries to tele-market using their trade names and to post their trade marks on the Defendants websites.

62. By allowing Palmer Administrative Services, their telemarketers and their associated subsidiaries to tele-market using their trade name, and by allowing Palmer Administrative Services to use their trade-marks, the Defendants purposefully led consumers to believe that their agents and subsidiaries had the authority to act on their behalf.

63. Palmer Administrative Services and their associated subsidiaries, provided their agents advertising on its website and provided to skeptical consumers, affirming that the Defendants and their agents were, in fact, "Partners."

## SECOND FACTS OF SUBSTANCE
### *The Massive Scope of Illegal Telemarketing At Issue*

64.    The scope of the illegal telemarketing campaign at issue in this case is

confirmed by records contained with the Federal Trade Commission Do Not

Call Registry Database.

65.    The Plaintiff never provided the Defendants "prior express consent" to

receive autodialed telemarketing calls promoting the goods and services of

the Defendants.

66.    The scope of the illegal telemarketing campaign at issue is also evidenced by

records of consumer complaints obtained in response to Freedom of

Information Act requests.

67.    In June of 2016, the United States District Court for the Northern District of

West Virginia under the "TCPA" denied a motion to dismiss filed by

"Got Warranty Inc." as well as co-defendants *N.C.W.C.* and *Palmer*

*Administrative Services*.  The Defendants filed a motion to dismiss the

"TCPA" class action on the ground that the Plaintiffs did not suffer concrete

harm by receiving telephone calls from the defendants who implemented the

use of an "Automatic Telephone Dialing System" (ATDS) to the plaintiffs

cellular telephones. The court relied on *Spokeo v. Robbins,* found to the

contrary, expressly holding that, "Unwanted phone calls cause concrete

harm". The court also found "intangible harm" caused by telephone calls

that violate "TCPA," such as "invasion of privacy," wasting a consumers

time or causing risk of injury due to interruption of concentration while

driving. In addition the drainage of a cellphone battery and the cost for

electricity to charge the battery is concrete material harm. Therefore, a

claim of this magnitude deserves to be heard in court.

68.   A formal request to the Federal Trade Commission was proffered by

the Plaintiff for telephone records and complaint records pertaining to

present and past inquiries by consumers against "Palmer

Administrative Services" and its subsidiaries for the violation of "TCPA".

### THIRD FACTS OF SUBSTANCE
*The Telemarketing Sales Rule*
*and The National Do Not Call Registry*

69.   Congress directed the FTC to prescribe rules prohibiting abusive and

deceptive telemarketing acts or practices pursuant to the Telemarketing Act,

15 U.S.C. §§ 6101-6108. The FTC adopted the original TSR in 1995,

extensively amended it in 2003, and amended certain provisions thereafter.
16 C.F.R. Part 310.

70.   Amongst other things, the 2003 amendments to the TSR established a

do-not-call registry, maintained by the FTC (the "National DNC Registry" or

"Registry"), of consumers who do not wish to receive certain types of

telemarketing calls. Consumers can register their telephone numbers on the

Registry without charge either through a toll-free telephone call or online at

donotcall.gov. The Plaintiff registered telephone numbers ending in 1666

and 3424 with the FTC in compliance with the do-not-call list.

71.   Consumers who receive telemarketing calls to their registered

numbers can complain of Registry violations the same way they registered,

through a toll-free telephone call or online at donotcall.gov, or by otherwise

contacting law enforcement authorities. The Plaintiff on hundreds of

occasions filed such complaint for violations of the do-not call registry.

72.    Under the TSR, a "telemarketer" is any person who, in connection with

telemarketing, initiates or receives telephone calls to or from a customer or

donor. 16 C.F.R. § 310.2(ff). A "seller" means any person who, in

connection with a telemarketing transaction, provides, offers to provide, or

arranges for others to provide goods or services to the customer in exchange

for consideration. Id. § 301.2(dd).

73.     The FTC allows sellers, telemarketers, and other permitted organizations to

access the Registry online at telemarketing.donotcall.gov, to pay any

required fee(s), and to download the numbers not to call.

74.     Under the TSR, an "outbound telephone call" means a telephone call

initiated by a telemarketer to induce the purchase of goods or services or to

solicit a charitable contribution. 16 C.F.R. § 310.2(x).

75.     The TSR prohibits sellers and telemarketers from initiating an

outbound telephone call to numbers on the Registry. 16 C.F.R.§ 310.4(b)(1)

(iii)(B).

76.      The TSR prohibits sellers and telemarketers from initiating an outbound

telephone call to any consumer when that consumer previously has stated

that he or she does not wish to receive an outbound telephone call made by

or on behalf of the seller whose goods or services are being offered.

16 C.F.R. § 310.4(b)(1)(iii)(A).

## THE LEGAL BASIS OF THE CLAIMS

77.   The claims of the Plaintiff's, arise pursuant to the provisions of the TCPA, a

       federal statute enacted to prohibit unreasonable invasions of privacy via

       certain telemarketing practices.

78.   There are questions of law and fact common to Plaintiff, including but not

       limited to the following:

              (a.) Whether the Defendants violated the TCPA by

              engaging in advertising by unsolicited, autodialed, non

              emergency telemarketing calls to residential and cell

              telephone lines.

              (b.) Whether the Defendants associates illegally

              tele-marketed calls to consumers throughout the United

              States promoted by trade name the goods or services of

              the Defendants.

              (c.) Whether the aforementioned unsolicited ATDS tele-

              marketing phone calls by the Defendants associates were

              made "on behalf of" the Defendants.

(d.) Whether the Plaintiff is entitled to statutory damages as a result of the Defendants' actions;

(e.) Whether an agency relationship existed between Palmer Administrative Services and the Defendants;

(f.) Whether the Defendants had the ability to control the tele-marketing practices of their agents and subsidiaries;

(g.) Whether Michael Shaftel provided the Defendants with their apparent authority to tele-market on his behalf; and

(h.) Whether Michael Shaftel ratified the Defendants illegal acts.

(i) Whether the Defendants should be enjoined from engaging in such business in the future.

(j) Whether the agents or the Defendants used an artificial telephone dialing system in making non emergency call to the Plaintiff.

(k) Whether the Defendants can meet their burden of proving they obtained written consent from the Plaintiff

to make such calls; Written consent that is clearly and

unmistakably stated.

## CAUSES OF ACTION
### COUNT I – VIOLATION OF THE TCPA: 47 U.S.C. § 227(b):
### PRE-RECORDED MESSAGES

79.   The Plaintiff re-alleges and incorporates the foregoing allegations as if set

      forth fully herein;

80.   The TCPA makes it unlawful to initiate any telephone call to any residential

      or cell phone telephone line using an ATDS, artificial or prerecorded voice to

      deliver a message without the prior express consent of the called party;

81.   The Plaintiff alleges the Defendants jointly engaged in tele-marketing in

      violation of the TCPA's prohibition against telemarketing via ATDS;

82.   The Plaintiff alleges that such violations of the TCPA were both willful and

      negligent;

83.   The Plaintiff IS entitled to have his rights, status, and legal relations

      relating to the Defendants' use of tele-marketing via ATDS

      determined under the TCPA via this action.

## COUNT II -- INJUNCTIVE RELIEF TO BAR FUTURE TCPA VIOLATIONS

84.    The Plaintiff re-alleges and incorporates the foregoing allegations as if set

        forth fully herein;

85.    The TCPA expressly authorizes injunctive relief to prevent further violations

        of the TCPA.

86.    The Plaintiff, respectfully petition this Court to order that all Defendants,

        including but not limited to their employees, agents, or other affiliates, to

        immediately cease engaging in unsolicited tele-marketing in violation of the

        TCPA.

## VIOLATIONS OF THE TELEMARKETING SALES RULE
### COUNT I— ASSISTING AND FACILITATING ABUSIVE
TELEMARKETING
ACTS OR PRACTICES IN VIOLATION OF THE TELEMARKETING
SALES RULE (TSR)

87.    The Defendants who are "seller[s]" and/or "telemarketer[s]" engaged in

        "telemarketing," as defined by the TSR, 16 C.F.R. § 310.2;

88.    The Defendants:

(a.)   Initiated or caused the initiation of outbound telephone calls to telephone

numbers on the National DNC Registry to induce the purchase of goods or

services, in violation of 16 C.F.R.§ 310.4(b)(1)(iii)(B);

(b.)   Failed to transmit or cause to be transmitted to caller identification services

the telephone number and name of the telemarketer making the call, or the

customer service number and name of the seller on whose behalf the

telemarketer called, in violation of 16 C.F.R. § 310.4(a)(8); and

(c.)   Abandoned outbound telephone calls, in violation of 16 C.F.R. § 310.4(b)(1)

(iv).

## COUNT II—THE DEFENDANTS VIOLATING THE NATIONAL DO NOT CALL REGISTRY

89.   In numerous instances, in connection with telemarketing, the Defendants

have engaged in initiating or causing the initiation of outbound telephone

calls to telephone numbers on the National DNC Registry to induce the

purchase of goods or services, in violation of 16 C.F.R. § 310.4(b)(1)(iii)(B).

## COUNT III - FAILURE TO TRANSMIT CALLER ID

90.   In numerous instances, in connection with telemarketing, the Defendants

have failed to transmit or cause to be transmitted to caller identification

services the telephone number and name of the telemarketer making the call,

or the customer service number and name of the seller on whose behalf the

telemarketer called, in violation of 16 C.F.R. § 310.4(a)(8).

## COUNT IV—DEFENDANTS
## ASSISTING AND FACILITATING ABUSIVE TELEMARKETING ACTS OR PRACTICES IN VIOLATION OF THE TELEMARKETING SALES RULE (TSR)

92.   "Telemarketer[s]" engaged in "telemarketing," as defined by the TSR, 16

C.F.R. § 310.2.

93.   The Defendants provided substantial assistance or support:

(a) Initiated or caused the initiation of outbound telephone calls to

telephone numbers on the National DNC Registry to induce the

purchase of goods or services, in violation of 16 C.F.R.§ 310.4(b)(1)

(iii)(B);

(b) Failed to transmit or cause to be transmitted to caller identification

services the telephone number and name of the telemarketer making

the call, or the customer service number and name of the seller on

whose behalf the telemarketer called, in violation of 16 C.F.R. §

310.4(a)(8).

## PLAINTIFFS INJURY

94.    The Plaintiff has suffered and will continue to suffer injury as a result of

        Defendants' violations of the TSR. Absent injunctive relief by this Court,

        Defendants are likely to continue to injure consumers and harm the public

        interest.


## THIS COURT'S POWER TO GRANT RELIEF

95.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to

        grant injunctive and such other relief as the Court may deem appropriate to

        halt and redress violations of any provision of law enforced by the FTC.

96.    Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified

        by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990,

        28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d),

        authorizes this Court to award monetary civil penalties of up to $41,484 for

        each violation of the TSR. See 16 C.F.R. § 1.98(d) (2018). All TSR

        violations alleged in this Complaint, however, occurred while the civil

        penalty was capped at $16,000 per violation. See 16 C.F.R. § 1.98(d) (2016).

Defendants' violations of the TSR were committed with the knowledge

required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

97.    This Court, in the exercise of its equitable jurisdiction, may award ancillary

relief to prevent and remedy any violation of the TSR and the FTC Act.

## PRAYER FOR RELIEF

98.    WHEREFORE, the Plaintiff requests that this Court:

A. Enters a judgment against Defendants and in favor of Plaintiff for each

violation alleged in this Complaint;

B. Award the Plaintiff monetary civil penalties from each Defendant for

every violation of the; Violation of the Telephone Consumer Protection Act

1991(TCPA) 47 U.S.C.A. § 227 et seq., Sections 5(a), 5(m)(1)(A), 13(b),

and 16(a) of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), Section 6

of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the

"Telemarketing Act"), 15 U.S.C. § 6105, Section 5(a) of the FTC Act, 15

U.S.C. § 45(a), FTC Telemarketing Sales Rule ("TSR"), as amended, 16

C.F.R. Part 310

C. Enter a permanent injunction to prevent future violations of the TSR and

all other violations named and unnamed within paragraph (A) of page 31-32

of this complaint by the Defendants;

D. Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.


## JURY DEMAND

The Plaintiff demands a trial by jury of all claims that can be so tried.

Dated: August 21, 2018 at Great Neck, New York

Jay Brodsky,

On behalf of himself, Plaintiff, ProSe